# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1867

_____

WILLIAM H. FLETCHER,

Petitioner,

v.

STATE OF FLORIDA,

Respondent.

_____

Petition for Writ of Prohibition—Original Jurisdiction.

June 12, 2019

WINOKUR, J.

William H. Fletcher seeks a writ of prohibition, claiming that the trial court erred in denying him immunity from prosecution under section 776.032, Florida Statutes. We grant the petition.

I.

Fletcher was charged with one count of aggravated battery with a firearm, alleging that he shot the victim, Randy Parker, in the leg. Fletcher moved to dismiss the charge, asserting immunity from prosecution pursuant to section 776.032, Florida Statutes, the "Stand Your Ground" law.

During the immunity hearing, Fletcher, a bail bondsman with a concealed weapons permit, testified that the shooting constituted justifiable use of force. Fletcher testified that he and his brother had driven to Parker's home out of concern for their sister who was in a troubled relationship with Parker. Fletcher believed that Parker was violent and that Parker almost always carried a firearm on his person.

After arriving at Parker's home, Fletcher called 911 and walked to a nearby stop sign to inform police of the location. Fletcher then approached Parker's home and encountered his brother having a physical confrontation with Parker. Fletcher observed Parker reaching for his waistband. Fletcher brandished his firearm and warned Parker to stop. Parker made an aggressive move towards Fletcher's brother, causing Fletcher to fire a shot that struck Parker in his leg. After injuring Parker, Fletcher helped him back into his home. Fletcher then drove to the police station, waived his rights, and agreed to be interviewed.

Fletcher's sister testified that she was in an abusive relationship with Parker and that she wanted to leave Parker's home when her brothers arrived. Parker would not let her leave and confronted Fletcher's brother on the front lawn. Fletcher's sister also testified that she believed Parker was armed.

Parker and his mother, who both resided at the home where the shooting occurred, testified that Parker and Fletcher's sister were at home when someone knocked on the door, and when Parker answer it, Fletcher and his brother were standing outside. Parker testified that Fletcher's brother was confrontational with him and that when he saw Fletcher with a firearm, attempted to knock it out of his hand. Parker denied threatening to kill Fletcher's brother. Parker's mother also testified that Fletcher was behind Parker holding a gun to his head.

The trial court denied immunity. The court noted that the testimony of Parker and his mother conflicted with the testimony of Fletcher, his sister, and the 911 recordings. The court concluded that the 911 recording provided "the most credible

2

recounting of the events" and, as a result, Fletcher was not present during the "initial scrum" between Parker and Fletcher's brother. The court also stated that it was "clear that [Fletcher] issued a warning before firing his weapon." The court credited Fletcher and his sister's testimony regarding Parker's "violent and threatening behavior." Moreover, the court found that Parker "had a loose fitting shirt that could have hidden a gun." Thus, the court concluded that "[t]he fact that [Parker] did not actually have a firearm is irrelevant to the issues here, as all that is required was a reasonable fear that such a weapon was present and was about to be used."

Even though the trial court found that Fletcher "appear[ed] to have a viable claim for immunity for his actions," it denied immunity because it determined that Fletcher was trespassing on Parker's property when the shooting occurred. As a result, Fletcher was not where he was legally allowed to be, and was therefore not entitled to Stand Your Ground immunity:

> [Fletcher] and his brother were not invitees on that property, and had no right to remain therein. Even if the Court assumes they had a justification for trespassing on the property because they were concerned for their sister's safety, that justification would not excuse their trespass. They could have waited for the police to arrive before making contact at the house, and their concern for their sister's safety would not justify remaining on the property after she appeared at the door and her safety was confirmed. [Fletcher] and his brother Rashad had no right to be on the property at the time of the shooting, and were therefore engaged in criminal activity—a trespass—in a place where they had no right to be. They had an obligation to retreat, and could not simply stand their ground against a potential threat of deadly force. There is no right to immunity under such circumstances.

(citation omitted).

II.

This Court has recognized that a writ of prohibition may be sought to challenge a trial court's denial of immunity under Florida's Stand Your Ground law. *Peterson v. State*, 983 So. 2d 27 (Fla. 1st DCA 2008). A trial court's denial of pre-trial self-defense immunity involves a mixed standard of review. *Hair v. State*, 17 So. 3d 804, 805 (Fla. 1st DCA 2009). The trial court's factual findings must be supported by competent substantial evidence. *Id.* Legal conclusions, however, are reviewed de novo. *Id.*

Florida's Stand Your Ground law confers immunity from prosecution if an individual uses deadly force in accordance with section 776.012(2), Florida Statutes. § 776.032(1), Fla. Stat. Section 776.012(2), allows an individual to use or threaten to use deadly force "if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." An individual has no duty to retreat and "has the right to stand his or her ground," but only "if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be." *Id.*

III.

At the outset, it is worth noting that the trial court discredited Parker's testimony, as well as the testimony of his mother, in favor of the testimony adduced from Fletcher and his sister because the latter testimony was corroborated by the 911 recordings. More importantly, the trial court found that Fletcher had objectively reasonable fear that Parker was about to use a firearm on his brother. The only reason the trial court denied immunity was its belief that the evidence showed that Fletcher was trespassing on Parker's property and therefore, not where he had a right to be. As a result, this Court's analysis is limited to whether there was competent, substantial evidence to support

4

the trial court's finding that Fletcher was trespassing on Parker's property when the shooting occurred.[1]

The only evidence adduced that indicated that Fletcher was trespassing at the time of the shooting came from the testimony of Parker and his mother. The trial court generally discredited their testimony. They both stated that Fletcher was with his brother when the physical altercation between Parker and Fletcher's brother began. This version of events is contradicted by the 911 recordings, which the trial court found supported Fletcher's testimony that he was away from the property when the altercation began. Parker's own testimony that Fletcher was in front of him during the incident also undermines his mother's testimony since she stated that Fletcher was behind Parker holding a gun to his head.

The State relies on Fletcher's testimony during cross-examination that he was not invited to Parker's property. Immediately after stating this, however, Fletcher testified that he was not on the property until he thought Parker was going to shoot his brother. Fletcher added that before this occurred he was on the street. Fletcher's testimony is also bolstered by the testimony of his accident reconstructionist expert witness, who opined that based on the location of the street sign relative to Parker's driveway, Fletcher was on the public sidewalk and

---

[1] In 2017, the Legislature amended the Stand Your Ground statute, putting the burden of proof on the State to prove that a defendant is not entitled to immunity by clear and convincing evidence. § 776.032(4), Fla. Stat. Since the incident here occurred prior to the statute's amendment, the State argues that this case is subject to the old burden requiring Fletcher to prove that he is entitled to immunity by a preponderance of the evidence. *See Peterson*, 983 So. 2d at 29. This Court, however, has held that the change in the burden of proof applies retroactively. *Commander v. State*, 246 So. 3d 1303, 1304 (Fla. 1st DCA 2018). Regardless, burden of proof is irrelevant here because the trial court explicitly ruled that "it need not reach the issue of whether the former [standard] or amended [standard] applies [because] [t]he result would be the same under either version of the statute."

approximately five feet away from Parker when the shooting occurred. Moreover, Parker's own testimony that Fletcher was approximately three to five feet away from him supports the expert testimony.

Most importantly, the trial court's order seems to conflate the actions of Fletcher and his brother as it relates to its finding that Fletcher was trespassing. Specifically, the order uses the word "they" in explaining why Fletcher was not allowed to be on the property:

> Even if the Court assumes *they* had a justification for trespassing on the property because *they* were concerned for their sister's safety, . . . . [Fletcher] *and* his brother Rashad had no right to be on the property at the time of the shooting, and were therefore engaged in criminal activity—a trespass—in a place where *they* had no right to be. *They* had an obligation to retreat and could not simply stand their ground . . . .

(emphasis added).

While it is undisputed that Fletcher's brother was on Parker's property since he was the one who knocked on the door, Fletcher is not precluded from claiming immunity even if his brother had been trespassing.[2] The trial court seems to have imputed the actions of Fletcher's brother onto Fletcher when it made its factual determinations.[3] Because the record

---

[2] It is not necessarily clear to us that Fletcher's brother was actually trespassing on Parker's property when he began fighting with Parker. However, we do not address this question because Fletcher never raised it as a reason to support his immunity claim, either below or in his petition.

[3] To be clear, section 776.012(2) permits deadly force if the person reasonably believes that using such force is necessary to prevent imminent death or great bodily harm to another, but adds that "[a] person who uses or threatens to use deadly force in accordance with this subsection *does not have a duty to retreat* and has the right to stand his or her ground if the person using or

6

demonstrates that Fletcher was not on the property when he determined that his brother was in danger of death or great bodily harm, it was error to treat him as a trespasser.

IV.

The court found that Fletcher's use of deadly force was objectively reasonable under the circumstances. Thus, the only issue remaining is whether Fletcher had a duty to retreat because he was not where he was legally allowed to be. We find that the court erred in concluding that Fletcher was trespassing when he believed that his brother was in danger of death or great bodily harm. Accordingly, we find that Fletcher was entitled to immunity, grant Fletcher's petition, and quash the order below.

GRANTED.

WOLF and JAY, JJ., concur.

---

threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be." In other words, a person who was not in a place where he had a right to be is still entitled to use deadly force in the defense of another, but has a duty to retreat. In the defense of another situation, it is unclear whether the person who uses deadly force, or the person who is facing death or great bodily harm, bears the duty to retreat. The court seemed to recognize this, when it concluded that "[t]hey had an obligation to retreat." However, it seems nonsensical that a person who is not facing death or great bodily harm but is merely protecting someone who *is* facing such a threat has a duty to retreat. Because such a person can almost always retreat (as they are not facing death or great bodily harm) imposing this duty would gut the defense-of-another claim. While this seems to be an issue with the order below, we will not address it further because Fletcher never argued this claim.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Petitioner.

Ashley Moody, Attorney General, and Steve Edward Woods, Assistant Attorney General, Tallahassee, for Respondent.